CITY OF CLEVELAND, Appellee,

v.

SCHILL, Appellant.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80111.

Decided March 21, 2002.

Joan M. Bascone, Assistant City Prosecutor, for appellee.

Kenneth J. Rexford and Legal Aid Society, for appellant.

ANN DYKE, Judge.

{¶ 1}   This is an appeal from the Cleveland Municipal Court, which, on August 13, 2001, denied defendant-appellant Rusty A. Schill's oral motion to dismiss the charge of domestic violence.[1]   The defendant entered a plea of no contest and the court found him guilty of domestic violence in violation of R.C. 2919.25 and sentenced him to 180 days of suspended incarceration with two years inactive probation.

{¶ 2}   It is uncontested that the victim in this case is defendant's live-in girlfriend and that defendant is not and never has been married to the victim, has no children with the victim, and is not related to the victim.   The defendant raises the following assignment of error:

{¶ 3}   "The trial court should have dismissed the one count of violating R.C. 2919.25, called domestic violence, and proceeded on the complaint as a simple assault for the reason that the term 'cohabitation' is unconstitutionally vague on its face."

{¶ 4}   In his sole assignment of error, the defendant challenges the constitutionality of R.C. 2919.25 on its face and as it is applied for being in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.   Upon consideration, we find that the defendant's single assignment of error is not well taken.

{¶ 5}   The defendant does not deny that he caused or attempted to cause physical harm to the victim, his live-in girlfriend.   Instead, his only argument is that the assault should not have been characterized as domestic violence, as his live-in girlfriend did not fit within the definition of a "family or household member" or one with whom he "otherwise cohabits" for purposes of the statute.

---

1.   The defendant's brief states that the motion to dismiss was based upon the argument that the term "cohabiting" as used in R.C. 2919.25 is unconstitutional.   However, the defendant has not provided a copy of a written motion or transcript of the proceedings for our review.   The state in its brief also states that the defendant's motion to dismiss was made based upon the argument that R.C. 2919.25 was vague in part, as to the definition of "family or household member."

{¶ 6}   R.C. 2919.25 provides as follows:

{¶ 7}   "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

{¶ 8}   "* * *

{¶ 9}   "(E) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

{¶ 10}   "(1) *'Family or household member'* means any of the following:

{¶ 11}   "(a) *Any of the following who is residing or has resided with the offender:*

{¶ 12}   "(i) A spouse, *a person living as a spouse,* or a former spouse of the offender;

{¶ 13}   "* * *

{¶ 14}   "(2) *'Person living as a spouse'* means *a person* who is living or has lived with the offender in a common law marital relationship, *who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.*" (Emphasis added.)

{¶ 15}   The State argues that this matter is moot, as defendant has not denied that he caused or attempted to cause harm to the victim and has admitted in his brief that the victim was his live-in girlfriend. Notwithstanding this, the state argues that R.C. 2919.25 is constitutional, as a person of ordinary intelligence has a reasonable opportunity to know whether his relationship is encompassed within the term "cohabiting."

{¶ 16}   While the Ohio Supreme Court has reviewed the weight and sufficiency of evidence concerning cohabitation and R.C. 2919.25, it has not addressed whether the term "cohabiting" as used in R.C. 2919.25 is void for vagueness. We begin by noting that legislative enactments are strongly presumed to be valid and constitutional. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226; *State v. Tanner* (1984), 15 Ohio St.3d 1, 2, 15 OBR 1, 472 N.E.2d 689, 691; *State v. Dorso* (1983), 4 Ohio St.3d 60, 60–61, 4 OBR 150, 446 N.E.2d 449; *Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 375–377, 15 O.O.3d 450, 402 N.E.2d 519; *State v. Renalist, Inc.* (1978), 56 Ohio St.2d 276, 278, 10 O.O.3d 408, 383 N.E.2d 892. Further, even when there is doubt the statute is to be upheld. *State v. Campanella* (1977), 50 Ohio St.2d 242, 246, 4 O.O.3d 423, 364 N.E.2d 21.

{¶ 17}   Regarding the constitutionality of a statute, the Ohio Supreme Court held as follows:

{¶ 18} "Similarly uncontroverted is the legal principle that the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional. *State v. Sinito* (1975), 43 Ohio St.2d 98, 101 [72 O.O.2d 54, 330 N.E.2d 896]; *Wilson v. Kennedy* (1949), 151 Ohio St. 485, 492 [39 O.O. 301, 86 N.E.2d 722]; *Eastman v. State* (1936), 131 Ohio St. 1 [5 O.O. 248, 1 N.E.2d 140], paragraph four of the syllabus. Specifically, as to challenges to a statute based upon its alleged vagueness, the United States Supreme Court has stated, '* * * [I]f this general class of offenses [to which the statute applies] can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction.' *United States v. Harriss* (1954), 347 U.S. 612, 618 [74 S.Ct. 808, 98 L.Ed. 989]. Thus, we are obligated to indulge every reasonable interpretation favoring the ordinance in order to sustain it." *State v. Dorso* (1983), 4 Ohio St.3d at 60, 4 OBR 150, 446 N.E.2d 449.

{¶ 19} In addition, the legislature has presumed constitutionality as set forth in R.C. 1.47, which provides that "in enacting a statute, it is presumed that: (A) Compliance with the constitutions of the state and of the United States is intended* * *."

{¶ 20} In *Dorso,* the court set forth the standard to be followed when determining whether a statute is impermissibly vague or indefinite, stating: "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Dorso* at 61, 4 OBR 150, 446 N.E.2d 449, quoting *U.S. v. Harriss,* supra, at 617, 74 S.Ct. 808, 98 L.Ed. 989; see *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110. Defendant bears the burden of proving "beyond a reasonable doubt that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged." *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226–1227.

{¶ 21} Further *Dorso* holds that a statute is not void for vagueness merely because it could have been more precisely worded. *Dorso* at 61, 4 OBR 150, 446 N.E.2d 449; see *Roth v. United States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498; *U.S. v. Petrillo* (1947), 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877. The Constitution only requires that the language of the statute sufficiently convey "a definite warning as to the proscribed conduct when measured by common understanding and practices." *Petrillo* at 8, 67 S.Ct. 1538, 91 L.Ed. 1877.

{¶ 22} The United States Supreme Court has provided guidance in determining whether a statute is void for vagueness.

{¶ 23} "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" * * * than if the boundaries of the forbidden areas were clearly marked.' " *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222

{¶ 24} In *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 618 N.E.2d 138, the court stated that "[d]ue process requires that the terms of a criminal statute be reasonably clear and definite and that there be ascertainable standards of guilt on which citizens, courts, and the police may rely." *Id.* at 381, 618 N.E.2d 138.

{¶ 25} The defendant argues that while it is clearly understood that causing physical harm to others is prohibited, the domestic violence statute fails because the plain language does not provide the minimal guidelines for law enforcement to avoid arbitrary enforcement. We believe that the statute does indeed provide law enforcement with adequate guidelines. There is little fear that offenders will be arbitrarily charged with domestic violence when they admittedly live with the girlfriend/victim and are therefore clearly "cohabiting" with the victim as required by R.C. 2919.25.

{¶ 26} Furthermore, as the legislature did not define "cohabiting," it is to be given its common everyday meaning. *Dorso* at 62, 4 OBR 150, 446 N.E.2d 449. The domestic violence statute, R.C. 2919.25, gives fair notice to all that a person living as a spouse or who is otherwise cohabiting for purposes of the statute includes those with whom the offender is living. Despite the defendant's challenge, it appears that he fully understands the nature of his relationship with the victim because he refers to his "live-in girlfriend" in his brief. The ordinary person, including the defendant, is adequately warned that to assault the person he lives with, and with whom he is intimately involved, may be a violation of the domestic violence statute and that his or her conduct is therefore prohibited. This court finds that this relationship falls within the ambit of the statute and that R.C. 2919.25 is not unconstitutional as applied to the defendant.

{¶ 27} The Ohio Supreme Court has defined the term "cohabitation" as it is used in R.C. 2919.25(E)(1)(a) and provided courts with a clear understanding of the characteristics of the relationship:

{¶ 28} "The offense of domestic violence, as expressed in R.C. 2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances.

{¶ 29} "The essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126, syllabus.[2]

{¶ 30} The court in *Williams* went on to set forth factors which may be considered on a case-by-case basis in establishing the above criteria, such as provisions for shelter, food, clothing, utilities, and/or commingled assets, mutual respect, fidelity, affection, society, cooperation, solace, comfort, friendship, and conjugal relations. *Williams* at 465, 683 N.E.2d at 1130. According to *Williams*, it is not necessary for the offender and victim to live together in order to determine that they are "cohabiting" under the statute. The relationship between the offender and victim is crucial, as domestic violence is not a crime between strangers. In addition, we note that each relationship is unique and should be analyzed as such. In the instant case, the defendant admits that the victim is his live-in girlfriend and therefore the term "cohabiting" is given an even more common understanding than that determined in *Williams*.

{¶ 31} As the Ohio Supreme Court has interpreted the elements of "cohabitation" under R.C. 2919.25 and has given a constitutional construction to the statute, we follow *Williams*. *United Air Lines v. Porterfield* (1971), 28 Ohio St.2d 97, 100, 57 O.O.2d 288, 276 N.E.2d 629.

{¶ 32} The defendant further argues that the cohabitation factors set forth in *Williams* are too subjective and delve too deeply into the private lives of the offender and victim. Therefore, the defendant argues that the statute requires police, attorneys, judges, and jurors to make their own value judgments as to whether the offender and victim are "cohabiting." We are confident that the triers of fact are able to make this determination without arbitrarily inquiring into private areas. However, evidence of the nature of the relationship is required due to the changing face of family and relationships in our society.

---

2. We note that the issue before the court in *Williams* was a determination as to the sufficiency of the evidence of whether the offender and victim were "family or household members". under R.C. 2919.25, and not a question as to the constitutionality of the term "cohabiting." Unlike the case sub judice, in *Williams* there was no evidence that the offender and victim lived together.

{¶ 33} We find that the term "cohabiting" as used by the legislature in the domestic violence statute provides sufficient warning to offenders as to the type of relationships that are covered and that the term is not too vague to meet the requirements of due process under the Constitution. Judges and juries are able to make the necessary determination as to whether the offender and victim are cohabiting and fairly administer the law. The defendant has failed to overcome the strong presumption of constitutionality and has failed to meet his burden of proving beyond a reasonable doubt that the statute is unconstitutional in part, either facially or as applied.

Judgment affirmed.

ANNE L. KILBANE, P.J., and COLLEEN CONWAY COONEY, J., concur.